United States District Court
Eastern District of Michigan
Southern Division

United States of America,

Plaintiff,

v.

Charles H. Buckles, Jr.,

Defendant.

Case No. 25-cr-20539

Hon. Denise Page Hood

/

# Plea Agreement

The United States of America and the defendant, Charles H. Buckles, Jr., have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Count of Conviction

The defendant will waive his right to an indictment and will plead guilty to Count 1 of the Superseding Information. Count 1 charges the defendant with conspiracy to commit wire fraud under 18 U.S.C. § 1349.

## 2. Statutory Minimum and Maximum Penalties

The defendant understands that the count to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| | | |
|---|---|---|
| Count 1 | Term of imprisonment: | Up to 20 years |
| | Fine: | Up to $250,000, or twice the pecuniary gain |
| | Term of supervised release: | 5 years |

**3. Agreement Not to Bring Additional Charges**

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the factual basis.

**4. Elements of Count of Conviction**

The elements of Count 1 are:

1. That two or more persons conspired, or agreed, to commit the crime of wire fraud;

2. That the defendant knew of the conspiracy and its objects; and

3. That the defendant joined the conspiracy with the intent that at least one of conspirators engage in conduct that satisfies the elements of wire fraud.

**5. Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning in at least May 2020, and continuing through October 2021, BUCKLES, Co-conspirator 1, Co-conspirator 2, and others agreed to carry out an unemployment insurance (UI) benefits fraud scheme in the Eastern District of Michigan. As part of the conspiracy, BUCKLES, Conspirator 1, Conspirator 2, and others made or caused to be made fraudulent UI claims that resulted in the improper issuance of UI payments. In total, BUCKLES and his co-conspirators defrauded the State of Michigan's Unemployment Insurance Agency (MUIA) of more than $650,000.

In 2020 and 2021, MUIA, with financial assistance from the United States government, provided UI benefits to eligible unemployed individuals. Unemployed individuals in Michigan submitted UI claims to MUIA in person, over the telephone, or via the Internet. When MUIA granted a UI claim, it disbursed the UI benefits to the claimant through debit cards issued by Bank of America (BOA) in the claimant's name to

the claimant's provided address, or through Electronic Funds Transfers (EFTs) into the claimant's provided bank account. All EFTs of UI benefits to Michigan UI claimants, whether by a BOA-provided debit card or a claimant-provided bank account, involved interstate wires through BOA's data centers located in Virginia and Colorado to banks in Michigan.

In an effort to prevent fraud, MUIA investigators captured data about the interactions between individuals and the MUIA system in a subsystem called the "Michigan Integrated Data Automated System" ("MiDAS"). Each time an individual accessed a UI claim in MiDAS, it created a digital footprint that memorialized information such as the dates, times, and Internet Protocol addresses related to accessing the UI claim. By analyzing data in MiDAS, investigators identified fraudulent trends with UI claims, assigned relative fraud scores per claim, and flagged potentially fraudulent claims in the MUIA system. Once flagged, a claimant was required to provide additional information (e.g., proof of identification) that an MUIA employee was required to review and verify before approving the UI claim for payment.

During the conspiracy, BUCKLES and Co-conspirator 2 submitted or aided others in submitting numerous fraudulent UI claims, and paid

Co-conspirator 1 in connection with the approval of those claims. In some instances, BUCKLES and Co-conspirator 2 paid Co-conspirator 1 to expedite approval of certain UI claims before other claims that had been earlier filed so that the claimants would receive UI benefits faster and longer than other claimants.

During the conspiracy, Co-conspirator 1 was employed as a Lead Worker/Unemployment Insurance Examiner for the MUIA. In that role, Co-conspirator 1 had access to the MUIA UI claims system and could discard (i.e., cause to be discontinued) open fraud investigations for pending UI claims and adjudicate identity verification cases on numerous others so that the UI claims were approved. As part of the conspiracy, Co-conspirator 1 discarded open fraud investigations and adjudicated identity verification cases on numerous UI claims so that the claims were approved and illegitimate payments were made to claimants and co-conspirators who had filed claims in others' names without their consent.

During the conspiracy, BUCKLES served as an intermediary between Co-conspirator 1 and Co-conspirator 2 to: (1) identify the particular fraudulent UI claims that Co-conspirator 2 wanted Co-conspirator 1 to act upon; and (2) facilitate any payments by Co-

conspirator 2 through BUCKLES to Co-conspirator 1 in connection with her actions on the claims. In most instances, BUCKLES charged Co-conspirator 2 (and others who used him as an intermediary) a fee to facilitate Co-conspirator 1's actions on a UI claim. Cash App payment records further establish that BUCKLES served as the intermediary between Co-conspirator 1 and Co-Conspirator 2 during the scheme. In total, BUCKLES received between approximately $5,000 to $10,000 to facilitate both legitimate and illegitimate claims. BUCKLES also facilitated payments from Co-Conspirator 2 and others to Co-Conspirator 1 in connection with both fraudulent and legitimate UI claims, and facilitated the delivery of benefits debits cards to Co-conspirator 2.

**6. Advice of Rights**

The defendant has read the Superseding Information, has discussed the charges and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A. The right to plead not guilty and to persist in that plea;

B. The right to a speedy and public trial by jury;

C. The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D. The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E. The right to confront and cross-examine adverse witnesses at trial;

F. The right to testify or not to testify at trial, whichever the defendant chooses;

G. If the defendant chooses not to testify at trial, the right to have the jury informed that it may not treat that choice as evidence of guilt;

H. The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

I. The right to compel the attendance of witnesses at trial.

**7. Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry additional consequences under federal or state law. The defendant

understands that, if he is not a United States citizen, his conviction here may require him to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of his conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

**8. Defendant's Guideline Range**

**A. Court's Determination**

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, her probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will

be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C. Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

<u>Count 1 – Conspiracy to Commit Wire Fraud</u>

| | |
|---|---|
| § 2B1.1. Base Offense Level (wire fraud) | 7 |
| § 2C1.1(b) Specific Offense Characteristics | |
| § 2B1.1(b)(1)(H) (more than $550,000; not more than $1.5 M) | +14 |
| § 2B1.1(b)(2) More than 10 Victims | +2 |

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual agreements for sentencing purposes.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

**F. Not a Basis to Withdraw**

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

**9. Imposition of Sentence**

**A. Court's Obligation**

The defendant understands that in determining her sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

**B. Imprisonment**

**1. Recommendation**

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment

not exceed the midpoint of the defendant's guideline range as determined by the Court.

**2. No Right to Withdraw**

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If, however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

**C. Supervised Release**

**1. Recommendation**

The parties have no agreement as to supervised release.

**2. No Right to Withdraw**

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow

the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

**D. Fines**

The parties have no agreement as to a fine.

**E. Restitution**

The Court must order restitution to every identifiable victim of the defendant's offense. The Court will determine at sentencing who the victims are and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

The defendant agrees to make a full presentence disclosure of his financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

**F. Forfeiture**

As part of this agreement, defendant agrees to forfeit any and all property, real or personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to his participation in the described scheme under 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c). Specifically, defendant agrees to the entry of a forfeiture money judgment against him, in favor of the United States, in the amount of $7,500 (the "Money Judgment"). Defendant agrees that he personally obtained at least $7,500 as a result of the scheme described in the Factual Basis, above.

Following entry of this Rule 11 Agreement, defendant agrees to the Court's prompt entry of one or more orders of forfeiture and agrees to sign a Stipulated Preliminary Order of Forfeiture for the Money Judgment. Defendant agrees that the forfeiture order shall be final and effective as to his interests at entry.

Defendant acknowledges that he spent and dissipated the criminal proceeds that he obtained in connection with the described scheme, making these funds unavailable for forfeiture. For this reason, defendant agrees that the Money Judgment may be satisfied, to whatever extent possible, from any other property he owns or which is under his dominion and control. Defendant explicitly agrees to the forfeiture of any and all assets he has now, or may later acquire, as substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes his right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant agrees to cooperate with the United States in connection with its efforts to identify, locate, seize, and forfeit property in accordance with this agreement. Defendant agrees that he will cooperate with the United States by taking whatever steps are

necessary to deliver possession of, and clear title to, any property that is forfeitable to the United States and will execute any legal documents that may be required to transfer title to the United States. Defendant will take whatever steps are necessary to ensure that his assets are not sold, disbursed, hidden, wasted or otherwise made unavailable for forfeiture.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges, in any form, to any forfeiture carried out in accordance with this plea agreement, on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment. Defendant acknowledges that he understands that forfeiture is part of the sentence that may be imposed on him in this case and waives his right to challenge any failure by the court to advise her of this, under Rule 11(b)(1)(J), or otherwise, at the time his guilty plea is accepted. Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at sentencing, and

incorporation of forfeiture in the judgment and waives any right he may have to request a jury determine forfeiture under Rule 32.2(b)(5).

**G. Special Assessment**

The defendant understands that he will be required to pay a special assessment of $100 due immediately upon sentencing.

**10. Appeal Waiver**

The defendant waives any right he may have to appeal his conviction on any grounds. The defendant also waives any right he may have to appeal his sentence on any grounds, unless his sentence of imprisonment exceeds the top of the guidelines as determined by the Court.

**11. Collateral Review Waiver**

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by

collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

**12. Remedies for Withdrawal, Breach, Rejection, or Vacatur**

If the defendant is allowed to withdraw his guilty plea or breaches this agreement, or if the Court rejects this agreement, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the defendant has been permitted to plead guilty to a lesser-included offense, the government may also reinstate any charges or file any additional charges against the defendant for the greater offense, and the defendant waives his double-jeopardy rights with respect to the greater offense. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant

waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

**13. Use of Withdrawn Guilty Plea**

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of her rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14. Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15. Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made

by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

**16. Acceptance of Agreement by Defendant**

The government may withdraw from this agreement at any time before the defendant pleads guilty.

Jerome F. Gorgon Jr.
United States Attorney

John K. Neal
John N. Neal
Chief, Public Corruption and Civil Rights Unit

K. Craig Welkener
K. Craig Welkener
Assistant U.S. Attorney

Dated: October 29, 2025

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

Colin McLaughlin
Attorney for Defendant

Charles H. Buckles, Jr.
Defendant

Dated: 10/29/25