UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

CHARLES BUCKLES,

Defendant.

CRIMINAL NO. 25-CR-20539

HON. DENISE PAGE HOOD

---

**Government Sentencing Memorandum**
**as to Charles Buckles**

---

This is a three-defendant fraud/bribery conspiracy. The outsider, Ms. Fields, submitted fraudulent unemployment insurance applications and bribes. The middleman, Mr. Buckles, funneled the fraudulent applications and bribes to his contact at the Michigan Unemployment Insurance Agency (MUIA). And the insider, Ms. Folks, accepted the bribes and enabled payment on fraudulent applications. Each defendant has sought to minimize their role in the scheme, but no fraud occurs without each participant.

Together, defendants repeatedly defrauded the public, causing more than $650,000 in loss. For the reasons that follow, the Government contends that a sentence of 27 months—not to exceed the midpoint of the guidelines--would be

sufficient but not greater than necessary to achieve the purposes of sentencing.

## I. OFFENSE CONDUCT

As the middleman for both the money and communications, Buckles made this scheme work. Buckles facilitated the scheme by transmitting <u>thousands in bribe payments</u> and <u>communicating thousands of times</u> with Folks and Fields. He also monetized the scheme by requiring Fields and others to pay him for access to Folks, claim by claim.

*Extensive Buckles-Centric Communication*

As the PSR and Buckles' Plea Agreement lay out, Buckles was the intermediary between Ms. Folks (who accepted bribes) and Ms. Fields.

All scheme-related communication appears to have passed through Buckles. Folks and Fields never communicated directly to the government's knowledge, except on a single 3-way call facilitated by Buckles. Between April and June 24, 2020 (the period when most of the 2020 fraudulent claims were filed), **Folk's phone had over <u>900 contacts</u> (texts or calls) with Buckles' phone**. Contact between Fields' phone and one of Buckles' phones began on May 27, 2020, one day before Folks began accessing various claims filed by Fields. Between May 27 and June 24, 2020, **there were more than <u>3,100 contacts</u> between Fields' phone and Buckles'.** Frequent contact between Fields phone and one of Buckles' phones continued until approximately November 2020, at which point it effectively

ceased. From June 24 to August 25, 2020 (a period after most of the 2020 fraudulent claims had already been filed), Folks' phone had only 11 contacts with Buckles' phone.

*Extensive Bribe Payments Passed Via Buckles*

Buckles was the financial conduit as well. The table below details the approximate Cash App payments BUCKLES sent FOLKS from May 2020 through November 2023.

| | Total Paid | # Payments |
|---|---|---|
| **2020** | | |
| May | $3,725 | 20 |
| June | $9,950 | 23 |
| July | $250 | 2 |
| **2021** | | |
| October | $200 | 1 |
| **2022** | | |
| March | $300 | 1 |
| June | $600 | 2 |
| July | $450 | 1 |
| August | $1,300 | 4 |
| October | $950 | 3 |
| **2023** | | |
| February | $420 | 1 |
| March | $320 | 2 |
| April | $600 | 3 |
| May | $1,200 | 4 |
| June | $1,750 | 6 |
| July | $700 | 3 |
| September | $300 | 1 |
| November | $200 | 1 |

These were bribe payments, to induce Folks to push UI claims. And they are only part of the picture, since Buckles paid Folks with physical cash as well, not just CashApp.

The red box highlights that BUCKLES sent the largest amount ($9,950) to FOLKS in June 2020 across 23 separate payments, and the next largest amount ($3,725) in May 2020 across 20 separate payments. The May and June 2020 payments coincide with the most active period in which FOLKS accessed and acted upon fraudulent claims submitted by FIELDS. All three defendants have now pled, admitting that Buckles was the financial conduit.

*Buckles Monetized Access to Folks*

Buckles used his exclusive access to Folks to make money for himself. As Buckles has admitted in his plea agreement, "[i]n most instances, BUCKLES charged Co-conspirator 2 [Fields] (and others who used him as an intermediary) a fee to facilitate [Folks'] actions on a UI scheme." ECF 21, PageID.43. "In total," he "received approximately $5,000 to $10,000 to facilitate both legitimate and illegitimate claims." *Id.* This is less than Folks herself was charging, but because Buckles preserved his exclusive access to Folks, he made money from the scheme. This scheme was proprietary, in that sense: he monetized his access to Folks.

*Buckles Enabled the Whole Scheme*

Buckles also helped Fields collect her fraud proceeds, by giving her debit

cards that she had MUIA mail to his house. ECF 21, PageID.43 ("He "facilitated the delivery of benefits debit[] cards to Co-Conspirator 2 [Fields]."). He knew what was going on in the scheme overall—and cannot claim that he only knew about his own role.

Spurred by Buckles' bribes, this scheme led to a loss amount in excess of $650,000, for which Buckles should be held accountable. ECF 21, PageID.40 (Buckles Plea Agreement) ("In total, BUCKLES and his co-conspirators defrauded the State of Michigan's Unemployment Insurance Agency (MUIA) of more than $650,000.").

## II. Restitution

Restitution is mandatory and should reflect the best available evidence of actual loss. 18 U.S.C. § 3663A(b). Of the $650,000 for which Buckles and Folks are responsible, Fields was personally responsible for defrauding MUIA in the amount of $462,349.37." ECF 34 (Fields Plea Agreement) at PageID.87. MUIA was able to recoup or reverse payments of $36,899.64, and some of the claims filed from Ms. Fields' IP address—her own claim ($14,564 paid) and her daughter's claim ($12,268)—may have been otherwise-valid claims that Ms. Fields facilitated with bribe payments. This leaves the best estimate of actual loss of at least $398,617.73, without accounting for losses caused by Folks and not Fields.

Accordingly, the Government requests that the Court order joint and several restitution in the amount of at least the conservative figure of $398,617.73, as the estimated amount of actual loss caused by Buckles and his co-conspirators.

This sum should be made payable to:

State of Michigan Unemployment Insurance Agency - Restitution
Dept. No. 771760
PO Box 77000
Detroit, MI 48277-1760

## III. Guidelines Range

The Probation Department has calculated a total offense level of 18 for Mr. Buckles, and a criminal history category of I, yielding a guideline imprisonment range of 27-33 months. The United States agrees with this calculation.

*Buckles Not a Minor or Minimal Participant*

Although Mr. Buckles has claimed that his conduct was "minimal" or "minor," it was not.

The U.S. Sentencing Guidelines (USSG) allow for a decrease in the offense level for a "Mitigating Role" where a defendant was a "minimal" or "minor" participant, or something in between. USSG § 3B1.2 (allowing a -4 for a minimal role, -2 for a minor role, and -3 for "cases falling between[.]"). A defendant is eligible if they "play[] a part in committing the offense that makes him substantially less culpable than the average participant." USSG § 3B1.2, Application Note 3(A). The inquiry is "based on the totality of the circumstances

and involves a determination that is heavily dependent on the upon the facts[.]" *Id.*, Application Note 3(C).

Buckles' conduct does not qualify as minor or minimal.

In Buckles' defense, he is less culpable than his two co-defendants in some senses. Unlike Folks, he did not abuse a government job. Unlike Fields, he did not track down personal information to generate fake claims. He made the least money of the three. And on this point, it weighs in Buckles' favor that the loss amount for which he is responsible ($650,000, *see* Plea Agreement, ECF 21, PageID.43) greatly exceeds his "personal gain" of $5-10 thousand. USSG § 3B1.2, Application Note 3(A). What is more, as the Guidelines instruct, the fact that Buckles "perform[ed] an essential [and] indispensable role in the criminal activity is not determinative." USSG § 3B1.2, Application Note 3(C).

But the Guidelines direct us to look at the "totality of the circumstances." *Id*. In the full light of all the circumstances, Buckles' role was important, exclusive, and extensive—not minor.

*First*, the <u>importance</u> of Buckles' role weighs against a minor role. He was the middleman. Without him, Folks would not have been bribed by Fields. Without him, Fields would not have been emboldened by privileged access to multiply her fraud with more and more claims. Buckles understood the *whole* scheme and helped both co-defendants play their parts. His role was essential, and

that—while not determinative—weighs against him.

*Second*, the fact that Buckles' role was proprietary weighs against him. Buckles monetized his connection to Folks, essentially requiring Fields and others to pay *him* if they wanted to bribe *her*. ECF 21, PageID.43 ("[i]n most instances, BUCKLES charged Co-conspirator 2 [Fields] (and others who used him as an intermediary) a fee to facilitate [Folks'] actions on a UI scheme."). The Guidelines state that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." USSG § 3B1.2, Application Note 3(A) (emphasis added). Here, Buckles had a proprietary interest.

*Third and finally*, volume belies a mitigating role. The sheer number of contacts between Buckles and his co-conspirators – 900+ with Folks, and 3100+ with Fields in the relevant period—bely a minor role. The sheer amount of the bribes that Buckles conveyed to Folks—including $9950 in a single month—bely a minor role.

This was a three-person conspiracy, a three-legged stool. Mr. Buckles was not a minor or minimal participant: he played an important, exclusive, and extensive role. As a central figure in this crime, Mr. Buckles should not be allowed to minimize his role. His offense level should remain at 18.

## IV. Sentencing Factors

Title 18, United States Code, Section 3553(a), sets forth a number of factors that the Court shall consider in sentencing the defendant. Factors pertinent to the instant offense are below, numbered as they are in Section 3553(a):

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant;**
**(2) The need for the sentence imposed**
- **(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;**
- **(B) to afford adequate deterrence to criminal conduct;**
- **(C) to protect the public from further crimes of the defendant; and**
- **(D) to provide defendant with appropriate education or vocational training.**

The Court's sentence should reflect the scope and seriousness of this offense, and the need to promote respect for the criminal fraud laws in the Eastern District of Michigan. Defendant's punishment should take into account not only the scope and seriousness of his criminal conduct as described above, but also the need to deter future criminals. Here, Mr. Buckles' serious offense undermined the integrity of a system designed to help the most vulnerable.

The Court's sentence should have a deterrent effect on Mr. Buckles himself, and must also function as a <u>general</u> deterrence to others who are committing, have committed, or are considering committing similar offenses. A custodial sentence is important to help others understand that fraud—especially repeated, lucrative

fraud—does not warrant just a slap on the wrist.

The facts and arguments laid out above—combined with the discussion of facts and factors in the Presentence Investigation Report—adequately capture the factors listed and justify the government's recommendation.

**(3) The kinds of sentences available**

Under 18 U.S.C. 1349, for a conspiracy to commit wire fraud under 18 U.S.C. § 1343, the maximum sentence is 20 years' imprisonment and/or a fine not to exceed $250,000.00 or twice the pecuniary gain/loss. The Court may also impose terms of supervised release not to exceed three years.

## V. The sentencing range established by the Sentencing Guidelines

The appropriate sentencing range pursuant to the U.S. Sentencing Guidelines is 27-33 months' imprisonment. The range is based on an Offense Level of 21, a three-level downward adjustment for acceptance of responsibility, and a Total Offense Level of 18. Defendant has a Criminal History Category of I.

## RECOMMENDATION

Fraud induced by bribery is a very serious offense, and Buckles played a very serious role. The government contends that a sentence of 27 months—not exceeding the midpoint of the guidelines—would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

S/K. Craig Welkener
K. Craig Welkener (DC 1033585)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-0248
Kenton.Welkener@usdoj.gov

Dated: June 15, 2026